# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| **KAREN E. SEAY,**   }<br>   }<br>   **Plaintiff,**   }<br>   }<br>**v.**   }<br>   }<br>**MICHAEL J. ASTRUE, Commissioner**   }<br>**of Social Security,**   }<br>   }<br>   **Defendant.**   } | **Case No.: 5:09-CV-00298-RDP** |

## MEMORANDUM OF DECISION

Plaintiff Karen E. Seay brings this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act ("the Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying her applications for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under Title XVI of the Act. (*See* 42 U.S.C. §§ 405(g) and 1383(c)). For the reasons outlined below, the court finds that the decision of the Commissioner is due to be affirmed.

**I.   Procedural History**

Plaintiff filed her application for DIB and SSI on October 19, 2005[1]. (Tr. 40-42). Plaintiff alleged a disability onset date of December 2, 2004. (Tr. 55). Plaintiff's applications were denied on February 1, 2006. (Tr. 25-31, 253-58). Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). (Tr. 32-33, 35-38). The hearing was held on August 8, 2007 in Huntsville, Alabama, before ALJ Dan Grady. (Tr. 35, 260-76). In his September 28, 2007

---

[1] The ALJ and Transcript Index both indicate that Plaintiff filed her application on October 5, 2005. (Tr. 1, 12). However, the stamped date on the Application for Disability Insurance Benefits indicates October 19, 2005 was the filing date. (Tr. 40, 250).

decision, the ALJ determined that Plaintiff was not eligible for a period of DIB or SSI because she failed to meet the disability requirements of the Act and retained the residual functional capacity ("RFC") to perform sedentary, unskilled work . (Tr. 12-21). The Appeals Council denied Plaintiff's request for review of the ALJ's decision on December 17, 2008. (Tr. 4-6). Consequently, the decision became the final decision of the Commissioner, and therefore, properly subject to this court's review.

    At the time of the hearing in question, Plaintiff was thirty-five (35) years old with a ninth grade education. (Tr. 40, 263). Plaintiff previously worked as a nurse assistant. (Tr. 74, 263). In this occupation, Plaintiff performed tasks such as helping to lift and clean elderly patients, pushing patients in wheel chairs, and assisting them in other everyday activities. (Tr. 75-81, 91). Plaintiff contends that these duties required her to regularly lift things in excess of fifty (50) pounds. (Tr. 75, 77). Plaintiff alleges that she suffers from affective mood disorders, joint pain, arthritis, thyroid problems, and low back pain syndrome. (Tr. 25, 55, 253). According to Plaintiff, due to these problems she has been unable to engage in substantial gainful activity since December 2004. (Tr. 40, 250). There is no record evidence that Plaintiff has performed substantial gainful activity since her alleged onset date of disability. (Tr. 44, 47).

    During the hearing before the ALJ, Plaintiff testified that her depression renders her incapable of working for fear that she might "act out on someone." (Tr. 266, 275). Plaintiff states that this depression has existed materially since 1998, but that it has intensified since her mother's death on April 3, 2007. (Tr. 268). Plaintiff elaborated on her symptoms of depression by stating that she is angry with other people and is easily irritated. (Tr. 266). Plaintiff further stated that her depression has caused her to have occasional suicidal thoughts leading to several hospitalizations.

(Tr. 266-68). Upon the third such hospitalization, Plaintiff reports having homicidal thoughts in addition to thoughts of suicide. (Tr. 268). Additionally, Plaintiff testified that she experiences significant mood swings which emanate from a bipolar disorder she was diagnosed with by Dr. Lindsey and Dr. Blanchard. (Tr. 269). Plaintiff stated that her concentration levels are also significantly curtailed. (Tr. 270). Plaintiff also testified that she experiences back pain which radiates into both legs causing her significant pain all day and night, impacting her ability to sleep. (Tr. 270-72). To treat the back pain, Plaintiff was prescribed Lortab by her personal physician, Dr. Scruggs, but she maintains this does little to relieve her pain. (Tr. 271-72). As a result, Plaintiff states that she can not sit for more than fifteen minutes at a time and cannot stand for any period of time. (Tr. 272-73). Dr. Scruggs also prescribed Plaintiff with sleep aids which she has indicated alleviate her sleep problems. (Tr. 272). Plaintiff alleges that her symptoms impair her ability to do household chores and prevent her from participating in activities outside the house. (Tr. 273).

In her Daily Activities Questionnaire, dated November 7, 2005, Plaintiff indicates that she has been incapable of performing household chores since 1998 and that she needs assistance to do so. (Tr. 69). She further indicates that she cannot shop for her own needs and often cannot prepare meals. (*Id*.). She states that the only person she visits/socializes with is her mother (now deceased) and sister. (Tr. 61). Plaintiff claims that her concentration level wains after ten minutes. (Tr. 62). Further, Plaintiff states that the combination of depression and physical pain prevent her from working. (*Id.*).

The Third Party Activities Questionnaire filled out by Plaintiff's mother prior to the mother's death echoes the contents of Plaintiff's Questionnaire. (Tr. 64-67). Plaintiff's mother indicated that Plaintiff was often tired, did not generally aid in household chores, and did not engage in significant

3

outside activities. (Tr. 65). She also stated that Plaintiff does not easily communicate with others and does not often visit family or friends. (Tr. 66). Plaintiff's mother also indicates that Plaintiff suffers from a lack of concentration. (*Id.*).

In the Physical Activities Questionnaire completed by Plaintiff, she stated that she is unable to perform physical tasks. (Tr. 68-73). She also indicated that she cannot stand for more than five minutes, walk for more than ten, and that her day is mostly spent sitting. (Tr. 68). She does not use the assistance of crutches, cane, walker, or similar device. (Tr. 69). Plaintiff avers that she has difficulty performing personal care tasks and that she requires someone to watch after her during the day to help with these activities. (Tr. 69-70). Plaintiff has never, and does not currently perform outside chores, and claims that she rarely goes shopping because of her joint pain and lethargy. (Tr. 72).

In the Disability Report from the Social Security field office, Plaintiff stated that she stands at a height of 5'8" with a weight of 263. (Tr. 89). She also asserted that her symptoms began to present as early as 1998 and she has not worked at anytime since that date. (Tr. 90).

During the ALJ hearing, Plaintiff produced a recent medical treatment form along with a listing of current medications. (Tr. 102-03). In the medical treatment form, Plaintiff stated that she has been diagnosed with bipolar disorder. (Tr. 102). The form also disclosed that Plaintiff visited Huntsville Hospital on three separate occasions for "psychosis." (*Id.*). Additionally, Plaintiff listed a battery of medications for mood stabilization, depression, sleep problems, hypertension, muscle inflamation, and pain. (Tr. 103). At the hearing, Plaintiff promised to produce further medical documentation of her condition; however, only one medical source opinion of Dr. T.R. Lindsey was provided subsequent to the hearing. (Tr. 264-66). Dr. Lindsey's source opinion, dated August 6,

2007, indicates that Plaintiff has a moderate ability to respond appropriately to supervisors and to work with other employees and the general public. (Tr. 248). It also indicates that Plaintiff has a moderate ability to use judgment in both simple and complex work-related decisions and to deal with changes in the routine work setting. (*Id.*). Dr. Lindsey also indicates that Plaintiff has only mild impairment of ability to understand and execute both simple and detailed instructions. (*Id.*). However, Dr. Lindsey did note a marked impairment to ability to respond to customary work pressures and to maintain attention, concentration, or pace for periods of at least two hours. (*Id.*). Finally, Dr. Lindsey indicated no impairment of ability to maintain activities of daily living and only moderate impairment to social functioning. (*Id.*). Dr. Lindsey's source opinion is not accompanied by any medical evidence. The record indicates that no further medical documents were provided either at the hearing or before the ALJ's ruling.

The record does contain other relevant medical documentation. Medical records from Central North Alabama Health Services cover the years 2005 through 2007. (Tr. 153-90, 210-37). These records show that Plaintiff was treated for hypertension, chronic back pain, and depression. (*Id.*). In June and August 2005, Plaintiff was in no acute distress and her heart rate and rhythm were normal. (Tr. 154-59). Plaintiff was advised that she was obese and needed to exercise and diet to lose weight. (Tr. 154-55). In March 2007, Plaintiff underwent an MRI of her lumbar spine which was negative for disc herniation, neuroforminal compromise, or spinal stonosis. (Tr. 230). However, on April 26, 2007, Plaintiff's treating physician, Dr. Scruggs opined that Plaintiff's lower back pain limited her ability to maintain gainful employment and prescribed her Lortab to cope with the pain. (Tr. 213-14).

There is extensive documentation of Plaintiff's continued complaints of lower back pain starting in January 2004. (Tr. 176). Even after being proscribed Ultram to cope with her pain, Plaintiff continued to complain of radiating pain in her back and in both knees which was aggravated by prolonged sitting or standing. (Tr. 153, 171, 176, 220-21, 223). On November 3, 2005, Plaintiff was assessed with low back pain/muscle spasm and sciatica. (Tr. 229). Plaintiff's pain medication was noted as being ineffective on March 5, 2007, and she continued to complain of depression and lower back pain until her last visit to Dr. Scruggs on June, 7, 2007. (Tr. 212-16). In May 2007, Plaintiff complained that Lexeapro was intensifying her depression symptoms. (Tr. 212).

Doctor Carol Walker, Neuropsychologist, evaluated Plaintiff on January 3, 2006. (Tr. 184-87). Again, Plaintiff conveyed problems she was experiencing while working, which stem from her depression and physical pain. (*Id.*). Dr. Walker found Plaintiff to be open, friendly, with an easily established rapport. (Tr. 185). She also characterized Plaintiff's dress as appropriate and groomed. (*Id.*). Additionally, she noted Plaintiff's speech was fluent and memory and attention good, her thought processes were logical and goal directed, and her judgment was good. (*Id.*). Abstract thoughts were likewise unimpaired. (Tr. 186). Plaintiff was positively diagnosed with dysthymic disorder. (*Id.*). As a consequence of this condition, Dr. Walker found that Plaintiff might have difficulty interacting with co-workers or supervisors. (*Id.*). Dr. Walker gave Plaintiff a prognosis with appropriate treatment while noting that the worsening condition of Plaintiff's mother could be expected to exacerbate her depressive symptoms. (*Id.*).

On the same day Dr. Walker evaluated Plaintiff, Dr. P.K. Gulati, conducted a physical examination of Plaintiff. (Tr. 188-90). Dr. Gulati noted Plaintiff's complaints of radiating pain in her lower back and legs, and excessive fatigue. (Tr. 188). Dr. Gulati found Plaintiff positive for

hypertension and thyroid problems. (*Id.*). He also found that Plaintiff appeared to be in no acute distress. (*Id.*). An examination of Plaintiff's back revealed no spasms or tenderness to the touch and Plaintiff was able to alight from the examination table, touch squat and rise, and do a heel to toe walk without difficulty. (Tr. 189). Additionally, Plaintiff was able to walk with a normal gait and her range of motion was normal. (*Id.*). Dr. Gulati concluded his examination by noting that Plaintiff, although obese and potentially suffering from low back pain, was otherwise healthy and that she would be able to perform sitting jobs without much difficulty. (Tr. 190).

Plaintiff was also evaluated at the Community Free Clinic where she was diagnosed with hypertension, chronic back pain, and depression. (Tr. 236-38). Records from the Mental Health Center of Madison County were also introduced dated June 29, 2006 and November 6, 2006. (Tr. 241-43). Plaintiff was again diagnosed with dysthymic disorder. (Tr. 244). An unidentified physician also diagnosed Plaintiff with avoidant personality disorder. (*Id.*). A Global Assessment of Function ("GAF") was also performed and a score of 60[2] was assigned to Plaintiff. (Tr. 244).

## II.   ALJ Decision

Determination of disability under the Social Security Act requires a five step analysis. *See* 20 C.F.R. § 404.1 *et. seq.* First, the Commissioner determines whether the claimant is working. Second, the Commissioner determines whether the claimant has an impairment which prevents the performance of basic work activities. Third, the Commissioner determines whether claimant's impairment meets or equals an impairment listed in Appendix 1 of Part 404 of the Regulations. Fourth, the Commissioner determines whether the claimant's RFC capacity can meet the physical

---

[2]The GAF scale ranges from zero to ninety and is used to indicate overall judgment of a person's psychological, social, and occupational functioning. A GAF of fifty-one to sixty is assigned to an individual who has moderate difficulty in social occupational, or school functioning.

and mental demands of past work. The claimant's RFC is what the claimant can do despite her impairment. Finally, the Commissioner determines whether the claimant's age, education, and past work experience prevent the performance of any other work. In making this final determination, the Commissioner will use the Medical-Vocational guidelines in Appendix 2 of Part 404 of the Regulations when all of the claimant's vocational factors and RFC are the same as the criteria listed in the Appendix. If the Commissioner finds that the claimant is disabled or not disabled at any step in this procedure, the Commissioner will not review the claim any further.

The court recognizes that "the ultimate burden of proving disability is on the claimant" and that the "claimant must establish a *prima facie* case by demonstrating that [s]he can no longer perform h[er] former employment." *Freeman v. Schweiker*, 681 F.2d 727, 729 (11th Cir. 1982) (other citations omitted). Once a claimant shows that she can no longer perform her past employment, "the burden then shifts to the [Commissioner] to establish that the claimant can perform other substantial gainful employment." *Id.*

The ALJ found that Plaintiff has not engaged in substantial gainful activity since December 2, 2004. (Tr. 15). Plaintiff met the disability insured status requirements of the Act and acquired sufficient quarters of coverage to remain fully insured at least through March 31, 2007. (Tr. 14). Based upon the medical evidence presented, the ALJ concluded that Plaintiff has hypertension, exogenous obesity, low back pain syndrome, dysthymic disorder, avoidant personality disorder, and bipolar disorder which are "severe" impairments as defined by the Act. (Tr. 15). Nonetheless, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*).

According to the ALJ, nothing in the medical evidence reaches the level of a listed impairment. (Tr. 15). After consideration of all the medical evidence, including Plaintiff's subjective complaints, the ALJ found that Plaintiff retains the RFC to perform the exertional demands of sedentary, unskilled work. (Tr. 16). The ALJ further concluded that Plaintiff is able to understand, remember, and carry out simple tasks and instructions, although her contact with the public should be casual. (*Id.*). Additionally, the ALJ determined that Plaintiff's supervision likely should be supportive and changes to her workplace gradual. (*Id.*). Although the ALJ found that Plaintiff is unable to perform her past relevant work, there are nonetheless a significant number of jobs in the national economy which Plaintiff could perform, all of which allow Plaintiff to work with the above-mentioned limitations. (Tr. 19). Thus, the ALJ ruled that Plaintiff is not disabled as that term is defined in the Act and that Plaintiff, therefore, is not entitled to a period of benefits. (Tr. 20).

### III.    Plaintiff's Argument for Remand or Reversal

Plaintiff seeks to have the ALJ's decision, which became the final decision of the Commissioner following the denial of review by the Appeals Council, reversed, or in the alternative, remanded for further consideration. (*See* Pl.'s Mem. 10). Plaintiff asserts that the ALJ's decision is due to be reversed because (1) it is not supported by substantial evidence, and (2) it is inconsistent with applicable law. Plaintiff makes several more specific arguments as to why the ALJ's decision is deficient, including (1) the ALJ improperly discounted Plaintiff's testimony of pain and depression, (2) the ALJ failed to give Dr. Lindsey's opinion the weight it deserves, (*see* Pl.'s Mem. 8), and (3) the ALJ failed to fully and fairly develop the record. (*See* Pl.'s Mem. 10.)

**IV.     Standard of Review**

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701. For the reasons set forth below, the ALJ's decision denying Plaintiff benefits is due to be affirmed.

V.     Discussion

    A.     The ALJ Correctly Considered Plaintiff's Testimony

Plaintiff alleges that the ALJ improperly discounted Plaintiff's testimony of pain and depression. (Pl.'s Mem. 10). The ALJ determined that while Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, her statements concerning the intensity, persistence and limiting effects of those symptoms were not entirely credible. (Pl.'s Mem. 6; Tr. 17). In essence, Plaintiff contends that the ALJ did not properly apply the Eleventh Circuit Pain Standard. The law that governs subjective complaints of pain is well-settled:

> In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain. *See Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so. Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true.

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (some citations omitted).

Credibility determinations are emphatically for the ALJ to make. *Richardson v. Perales,* 402 U.S. 389, 400 (1971). There is sufficient evidence in the record to support the ALJ's credibility assessment as to the severity, persistence, and limiting effects of Plaintiff's symptoms. The record discloses that Plaintiff performed housework and helped care for her ailing mother. (Tr. 17, 153, 186). Case law instructs that ability to participate in everyday activities for short durations does not necessarily disqualify a claimant from disability. *Lewis v. Callahan*, 125 F.3d 1346, 1441 (11th Cir. 1997). However, this does not mean that the ALJ may not properly consider such an ability to

participate in daily activities in conjunction with other evidence in making a determination as to the severity of impairment. 20 C.F.R. §§ 404.1529(c)(3)(I), 416.929(c)(3)(I); *Marcia v. Bowen*, 829 F.2d 1009, 1012 (11th 1987). Thus, these activities are probative of an ability to perform some type of work, and support, along with the medical evidence in the record, the ALJ's RFC assessment.

The ALJ also pointed to the lack of objectively verifiable medical evidence at the level of impairment Plaintiff claims in her testimony. While the record certainly supports the existence of Plaintiff's symptoms, it does not invariably undergird her assessment of the intensity of the symptoms. For instance, in her consultative mental examination, Dr. Walker noted Plaintiff's difficulties. (Tr. 186). Nonetheless, Dr. Walker gave Plaintiff a good prognosis and found that there was nothing to suggest that she would have difficulty interacting with co-workers. (*Id.*). Plaintiff was also generally noted to be in no acute distress and well-oriented. (Tr. 211-12, 214-24). Similarly, Dr. Gulati's consultative physical examination indicated that while Plaintiff may not be able to perform work requiring long periods of standing, she would be able to perform sitting jobs without much difficulty. (Tr. 190). Moreover, in March 2007, Plaintiff underwent an MRI of her lumbar spine which was negative for disc herniation or spinal stonosis (Tr. 200). Plaintiff was assigned a moderately favorable GAF score of 60. (Tr. 244). This substantial evidence does not suggest the extreme severity of disability that Plaintiff alleges.

Plaintiff points to the longitudinal history of treatment for lower back pain to counteract the ALJ's conclusion. (Pl.'s Mem. 6; Tr. 153-83, 210-33). She asserts that there is no indication that any of her physicians disbelieved that she was in pain. (Pl.'s Mem. 6). Dr. Scruggs for example, noted that Plaintiff's pain impacted her ability to maintain gainful employment. (Tr. 213). While it is true that such a long history of seeking help for pain is probative of a certain level of actual pain, it does

not necessarily vitiate the ALJ's credibility assessment. The ALJ opinion does not seek to deny the existence of Plaintiff's symptoms, to the contrary, it recognizes the existence of some degree of impairment. The ALJ's opinion only substantially diverges from Plaintiff's position regarding the severity of her impairments. The medical record provides an objectively verifiable foundation for the ALJ's credibility assessment. As such, the ALJ did not improperly discount Plaintiff's testimony about the severity of her impairment.

### B. The ALJ Did Not Err in Rejecting Dr. Lindsey's Source Opinion

Plaintiff contends that the ALJ improperly failed to give Dr. Lindsey's Medical Source Opinion the weight it deserves. (Pl.'s Mem. 8).[3] The ALJ determined that Dr. Lindsey's opinion was not entitled to controlling weight because Dr. Lindsey's opinion is "unsupported by the treatment records and contains no notes of objective findings." (Tr. 19). Plaintiff maintains that such a conclusion is, "irrational in the face of the medical record which is replete with the Plaintiff's treatment for severe back pain." (Pl.'s Mem. 8).

An ALJ's determination of the weight afforded to a medical source's opinion on issues of the nature and severity of a claimant's impairments depends upon the source's examining and treating relationship with the claimant, the evidence the medical source presents to support his opinion, how consistent the opinion is with the record as a whole, the specialty of the medical source, and other relevant factors. *Social Security Ruling* 96-2p, 61 Fed. Reg. 34, 490. The opinion of a physician,

---

[3]Plaintiff's brief states that, "[t]he ALJ erred in failing to give Dr. Scruggs' opinion the weight it deserves. The ALJ "rejects his opinion" finding that it is not "well-supported" by "medically acceptable" clinical and diagnostic techniques...". The citation to the ALJ decision and quotes provided actually refer to Dr. Lindsey. (*See* Tr. 18). The court assumes Plaintiff intended to suggest that the ALJ improperly discredited Dr. Lindsey's–as opposed to Dr. Scruggs'– determinations and will proceed on that assumption.

even a treating physician, may be discounted when the opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques or if the opinion is inconsistent with the record as a whole.  *See* 20 C.F.R. §§ 404.1527(d), 416.927(d); *Crawford v. Commissioner of Social Security,* 363 F.3d 1155, 1159-60 (11th Cir. 2004).

It is true that Dr. Lindsey was Plaintiff's treating physician (Tr. 265), and therefore his opinion would be given controlling weight if it were well supported and consistent with substantial evidence in the record.  Of course, an ALJ may refuse to grant such weight to a treating physician's opinion where it appears the opinion is <u>not</u> well supported by medically acceptable clinical and laboratory diagnostic techniques, and is inconsistent with other substantial evidence in the claimant's record.  Social Security Ruling 96-2p, 61 Fed. Reg. 34, 490.  The ALJ noted that Dr. Lindsey's opinion was unaccompanied by treatment records and contains no objective findings. (Tr. 19, 247-49).  Here, the ALJ was justified in refusing to grant controlling weight to Dr. Lindsey's opinion.

As Plaintiff notes, the ALJ rejected Dr. Lindsey's assessment and relied instead on Dr. Gulati's examination. (Pl.'s Mem. 6; Tr. 19).  The ALJ found that Dr. Lindsey's opinion was wholly unsupported and was inconsistent with the other objective evidence. (Tr. 12).  Plaintiff contends that because Dr. Gulati did not have the benefit of reviewing Plaintiff's medical records from Dr. Lindsey, the ALJ's determination does not rest on substantial evidence.  (Pl.'s Mem. 6; Tr. 19, 188-90).  As discussed above, while the extensive record of longitudinal treatment for back pain may indicate severity of symptoms, that does not necessarily mandate that the ALJ was required to conclude that there was extreme impairment, especially when there are medical opinions suggesting otherwise.  Even if Dr. Gulati would have had access to Dr. Lindsey's records, it is not clear that in that event his conclusions would have been different.  In fact, Dr. Gulati's opinion and the opinion

14

of Dr. Lindsey may be read consistently. Both essentially found that Plaintiff has a degree of limitation but stopped short of substantiating Plaintiff's account of her symptoms' severity.

Thus, even if the ALJ had afforded full weight to Dr. Lindsey's opinion (and again, he was not required to do so), a different result would not have necessarily followed. Dr. Lindsey indicated that Plaintiff has, "marked limitations in her ability to respond to customary work pressure and maintain attention and concentration or pace for a period of at least two hours." (Tr. 249). However, the ALJ opinion acknowledges this position, finding that while Plaintiff is unable to perform past relevant work. The ALJ determined that Plaintiff nonetheless retained the RFC to perform sedentary unskilled work where her contact with the public is limited and her supervision is supportive. (Tr. 16, Finding No. 5). Accordingly, while a review of the record shows that the ALJ's finding and Dr. Lindsey's opinion are not inherently at odds, the ALJ did not err in refusing to grant Dr. Lindsey's medical source opinion controlling weight.

Plaintiff also cites the Medical Source Opinion of Dr. Scruggs which states that, "[Plaintiff] has been plagued by chronic low back pain which limits her ability to maintain employment". (Pl.'s Mem. 8; Tr. 213). Plaintiff implies that Dr. Scruggs' opinion was also not afforded proper weight. (Tr. 8).[4] However, the ALJ opinion only explicitly rejected the opinion of Dr. Lindsey, not Dr. Scruggs. Again, Dr. Scruggs' opinion did not explain to what degree or how Plaintiff's low back pain limited her ability to work. Moreover, even if the ALJ failed to sufficiently consider Dr. Scruggs' opinion (and the court finds he did not), Plaintiff has not shown prejudice. Dr. Scruggs' opinion

---

[4] As noted in footnote earlier, it is unclear whether Plaintiff intended to discuss the opinion of Dr. Lindsey or Dr. Scruggs. Plaintiff cites Dr. Scruggs' opinion but then discusses the ALJ's rejection of Dr. Lindsey's opinion, her treating physician. In any event, while certainly Dr. Scruggs stated that Plaintiff was under her care and that low back pain limited her ability to maintain gainful employment, he never indicated how or to what degree.

states–as does the ALJ opinion–that Plaintiff suffers from some degree of limitation. However, Dr. Scruggs' opinion does not substantiate the severity of impairment that Plaintiff contends she suffers from.

For these reasons, even assuming the ALJ improperly discounted the opinions of both Dr. Scruggs and Dr. Lindsey, there is no prejudice here because those opinions are not inconsistent with the ALJ's *relevant* findings.

**C.     The ALJ Fully and Fairly Developed the Record**

Plaintiff maintains that the ALJ failed to fully and fairly develop the record. (Pl. Mem. 10). However, Plaintiff does not cite specific deficiencies in the ALJ's development of the underlying record. It is notable that at the time of the ALJ's decision, Plaintiff had not yet produced documentation of multiple hospitalizations for suicidal thoughts. (Tr. 19). Plaintiff discussed these hospitalizations during her hearing and her attorney promised to provide substantiating documentation to the ALJ. (Tr. 274-75). More than thirty days after the hearing, Plaintiff's attorney provided the ALJ with only Dr. Lindsey's unsupported medical source opinion. (Tr. 12). A claimant bears the burden of establishing her case and this burden necessarily includes the duty to produce sufficient evidence supporting her claims. 20 C.F.R. § 416.912(a). When a claimant and her attorney fail to produce evidence, it becomes necessary to make a decision based on the evidence currently available. 20 C.F.R. § 416.916. Here, the ALJ did not err in handling the evidence with regard to Plaintiff's hospitalization records. There are no flaws apparent to the court with respect to the development of the record and Plaintiff has failed to specifically identify any such deficiencies. Consequently, the court finds the ALJ fully and fairly developed the record and his opinion is due to be affirmed.

## VI.     Conclusion

The court concludes that the ALJ's determination is supported by substantial evidence and the proper legal standards were applied in reaching this determination. The Commissioner's final decision is therefore due to be affirmed, and a separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this ___8th___ day of March, 2010.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE